IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Case No. 04-cv-01619-LTB-BNB

TINA GARCIA,

Plaintiff,

v.

BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA, a wholly owned subsidiary of the
Guardian Life Insurance Company of America, and
THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, a foreign insurance
company,

Defendants.

_____

# ORDER
_____

This matter is before me on the following:

(1)     Defendants' **Motion for Order Compelling Discovery of OIG-HUD**

**Information** [Doc. # 211, filed 8/16/2007] (the "First Motion to Compel"); and

(2)     **Defendants' Motion to Compel Production of Electronic Discovery From**

**Plaintiff [etc.]** [Doc. # 257, filed 10/10/2007] (the "Second Motion to Compel").

The First Motion to Compel is DENIED.

The Second Motion to Compel is GRANTED IN PART and DENIED IN PART.

I.

The plaintiff commenced this action in August 2004 alleging that her disability insurer,

Berkshire Insurance Company ("Berkshire"), breached in bad faith the insurance contract.

Complaint [Doc. # 1, filed 8/5/2004].  Neither the Complaint nor the Amended Scheduling Order

[Doc. # 8, filed 10/8/2004] specify the nature of the plaintiff's claimed disability.  Berkshire

argues that it has not breached the disability insurance contract because:

> Among other applicable terms and conditions under the Policy, the
> payment of monthly indemnity under the Policy is contingent upon
> adequate Proof of Loss being provided in support of a claim for
> benefits.
>
> This dispute is before this honorable court simply because Plaintiff
> has consistently failed to provide adequate and timely Proof of Loss
> to Berkshire since September 2003 and as a result Berkshire has
> been prevented from determining whether or not Plaintiff in fact has
> a compensable disability.

Amended Scheduling Order at p.4.

The evidence indicates that the plaintiff's initial claim for disability was premised on a

sleep disorder.[1]  The plaintiff also claims that two subsequent events--a sexual assault by her

psychiatrist[2] and a head injury resulting from an auto accident--have exacerbated her claimed

disability.  According to the plaintiff:

---

[1]In a response to interrogatories requesting the facts supporting the plaintiff's claim of
disability in January 1999, the plaintiff stated, in relevant part:

> Plaintiff was, by the end of 1999, unable to competently perform
> the duties of her own occupation as President of a commercial and
> residential realty firm involved with government housing contracts,
> due to psychiatric/sleep difficulties. . . .

Plaintiff's Response to Defendant Berkshire's First Set of Interrogatories [Doc. # 196-11, filed
7/19/2007] at p.2.

[2]No specific date for the "sexual assault" is provided by the plaintiff, but the defendants
state that "[t]he referenced assault is based on Plaintiff's claim that she was molested by Dr. Kim
Nagel, her psychiatrist, with whom she engaged in a one-year sexual relationship beginning in late
1999."  Defendants' Memorandum Brief In Support of Motion for Summary Judgment [Doc. #
120, filed 3/8/2007] at ¶19.

> On November 28, 1999, Ms. Garcia filed a claim for LTD [long
> term disability] benefits, claiming total disability.  The claim was
> based on a diagnosis of sleep disorder, post-traumatic stress
> disorder ("PTSD"), and adult attention deficient/hyperactivity
> disorder. . . .  Ms. Garcia's condition later worsened.  First, she was
> the victim of sexual assault by the psychiatrist treating her sleep
> disorder/PTSD, Kim Nagel, M.D.  Ms. Garcia was also involved in
> a 20 m.p.h. rear-end car wreck on September 20, 2002, resulting in
> organic brain damage, orthopedic injuries and chronic pain
> (aggravating her psychological condition).

Plaintiff's Brief In Support of Her Motion for (Partial) Summary Judgment [Doc. # 117, filed

3/1/2007] at ¶7 (internal citations omitted).  The initial PTSD claim, which predates both the

claimed sexual assault or the auto accident, was caused by "an extremely intrusive investigation by

the Department of Housing and Urban Development," which her treating psychiatrist[3] described

as follows:

> During this investigation, [the plaintiff] had many of the files of her
> business seized, had her business closed down and experienced
> threats as well as intrusive investigation of her son.  She began to
> experience these symptoms of Posttraumatic Stress Disorder in late
> 1998 and was unable to function adequately at work after the
> beginning of 1999.

Exhibit 14 to Defendants' Memorandum Brief In Support of Motion for Summary Judgment

[Doc. # 123-5, filed 3/8/2007] at p.3.

Berkshire has paid benefits to the plaintiff for the periods July 1999 through August 2003

and February 2007 to the present.  See Plaintiff's Brief In Support of Her Motion for (Partial)

Summary Judgment [Doc. # 117] at ¶8.  Consequently, the dispute now centers around

Berkshire's failure to pay benefits for the period August 2003 to February 2007.

---

[3]The treating psychiatrist was Dr. Nagel.  See note 2, supra.

II.

The First Motion to Compel seeks an order compelling the deposition of Special Agent

Michael Wilson of the Office of the Inspector General, U.S. Department of Housing and Urban

Development. First Motion to Compel at p.1. S.A. Wilson apparently signed an affidavit in

support of a search warrant issued in 1999 authorizing the search of "items owned or controlled

by Plaintiff Lisa Garcia and her business, Special Properties, Inc." First Motion to Compel, Exh.

A [Doc. # 211-2] at p.1. The testimony of S.A.Wilson is relevant and necessary, according to

Berkshire, because:

> a.   Plaintiff claims that in 1999, she suffered a total disability from
> post-traumatic stress disorder and was unable to perform the
> material and substantial duties of her occupation as President and
> CEO of her company, SPI. Plaintiff wants Defendants to pay her
> disability benefits.
>
> b.   The timing of Plaintiff's claim of disability coincided with the
> criminal investigation and seizure of her business by OIG-HUD,
> such that it appears Plaintiff no longer even had an occupation to
> perform at the time she asserted her disability claim.
>
> c.   The testimony sought may corroborate Plaintiff's pattern of
> fraud, especially the fabrication of documents . . . . and may show
> the Plaintiff's current disability benefits litigation is without merit
> and possibly an attempt to defraud Defendants.
>
> d.   The testimony of Agent Wilson may substantiate the following
> factual events: 1) The creation of false billings and invoices by
> Plaintiff and Special Properties for HUD contracts, as well as false
> billings by companies owned by relatives and employees of Plaintiff;
> 2) HUD's investigation of Plaintiff and Special Properties, as well
> as the factual bases of HUD's referral of the matter to OIG for
> investigation and prosecution; 3) Special Properties' failure to
> comply with OIG-HUD's audit of its accounting records,
> checkbooks, bank statements, canceled checks,
> vendor/subcontractor files, employee listings, work order logs, and
> other correspondence relating to its contracts with HUD; 4) overall

4

       basis of Agent Wilson's sworn assertion that probable cause existed to believe that Plaintiff engaged in a scheme to defraud and to obtain money from HUD by means of false and fraudulent pretenses; and 5) seizure of SPI's business records and the resulting closure of her business.

First Motion to Compel at ¶5.

     The plaintiff resists the deposition of S.A. Wilson, primarily on relevancy grounds, arguing that "[n]o indictment or information, or any other form of prosecution, was ever initiated against Ms. Garcia or against Special Properties, Inc. (her company). The proposed deposition is little more than a 'fishing expedition,' and more likely intended to further harass Ms. Garcia." Plaintiff's Response to Defendants' Motion for Order Compelling Discovery of OIG-HUD Information [Doc. # 222, filed 9/5/2007] at ¶1.

     The scope of discovery in a civil action generally is governed by Rule 26(b)(1), Fed. R. Civ. P., which provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Although pretrial discovery is broad, it is not limitless, and discovery should not be allowed where the resulting benefit would be "negligible." Munoz v. St. Mary-Corwin Hospital, 221 F.3d 1160, 1169 (10th Cir. 2000).

     Discovery in this action has closed. Consequently, nothing learned from S.A. Wilson will lead to the discovery of admissible evidence because there will be no further discovery. Nor will the testimony of S.A. Wilson be relevant or admissible. The issue in this case is whether the plaintiff was disabled from August 2003 to February 2007, not her business practices in 1999 and

before.[4]  Berkshire paid disability benefits for the period 1999 to 2003, and the bases for the

plaintiff's claimed disability have changed substantially based on the alleged sexual assault in 1999

and the alleged head injury in 2002.  I find that matters relating to the OIG-HUD investigation in

1999 concerning the plaintiff's business practices in 1999 and before are not sufficiently relevant

to the plaintiff's claim of disability in 2003 and thereafter to warrant the discovery sought.  See

Kee v. R-G Crown Bank, 2007 WL 2406938 (D. Utah August 20, 2007) (denying discovery of

financial information because the requested information related to the wrong time period and

sought information about irrelevant transactions rather than information about financial position).

III.

In its Second Motion to Compel, Berkshire seeks the production of a DVD created by the

University of Denver and containing the "emails sent or received by Ms. Garcia using her email

account at the University of Denver."  Second Motion to Compel at p.2.  Berkshire asserts that

the e-mails contained on the DVD were requested in Defendant Guardian's First Set of Requests

for Production to Plaintiff, a copy of which is attached to the Second Motion to Compel.  [Doc. #

257-2.]   In particular, in a letter dated May 29, 2007, from Rachel Yates, counsel for the

defendants, to Steve Silvern, plaintiff's counsel, Ms. Yates stated:

> I am also writing to request information that was requested in our
> written discovery.  In particular, in the Guardian requests for
> production of documents (nos. 1 and 2), we asked for electronic
> messages pertaining to Ms. Garcia's communications with others
> about the substance of this case and about her medical condition.
> To date, those have not been produced.  We request that all such
> electronic messages be burned to a CD or other electronic format,

---

[4]The OIG-HUD investigation might have been marginally relevant in connection with the
plaintiff's initial claim of disability in 1999, although it seems to me that the relevant information
would be the impact of the investigation on the plaintiff and not the outcome of that investigation.

6

> preserving any metadata that may have existed.  Alternatively, if
> you wish to produce her hard drive, we will made a copy and return
> it quickly to you.

Second Motion to Compel, Exh. 1 [Doc. # 257-2] at p.1.[5]

Berkshire made a similar request to the University of Denver, informally and not by way of

a subpoena duces tecum or other discovery device, for the following:

> We would also like to get copies of all emails sent and received to
> her [Tina Garcia's] email account through DU from 1/05-present.
> We are not sure which account that she may have used. . . . She
> attended the law school from 2001-2006; the Women's College
> from 1999-2001; received her LLM in Natural Resources and
> Environment during 2005-2006; and attended the Graduate School
> of International Studies in 2002.

> If it is possible, we would like to receive the emails in their native
> format which would include the metadata.

Second Motion to Compel at Exh. B [Doc. # 257-2].

The University of Denver prepared a DVD in response to the request and gave it to

plaintiff's counsel on August 29, 2007.  Second Motion to Compel at p.2.  Thereafter:

> Defendants requested a copy of the DVD from Plaintiff, but was
> [sic] told that Plaintiff's counsel wanted to review it first for
> privilege.

> Because the emails were "quite voluminous," Plaintiff's counsel
> needed more than a week to complete the review.  From this
> voluminous production, on September 7, 2007, Plaintiff's counsel
> produced hard copy printouts of just ten email strings, with two
> attachments.  It also tendered a privilege log, with 135 additional
> emails listed.

---

[5]More precisely, Berkshire requested all documents, including electronic documents, "between you [the plaintiff] (or any person acting on your behalf) and any third party relating or pertaining to any of the allegations set forth in your Complaint dated on or about July 7, 2004," and "relating to any aspect of your medical condition or health, from January 1, 2002 through the present."  Second Motion to Compel, Exh. 1 [Doc. # 257-2] at p.5-6.

<u>Id</u>.

The DVD contains far more information than the plaintiff disclosed.  Specifically,

unrefuted evidence establishes that the DVD includes "4083 emails in Microsoft Outlook, with

1572 attachments," including Word documents, Power Point slides, and Excel spreadsheets.

Affidavit of Oliver Fuchsberger [Doc. # 257-3], pp.12-13 at ¶4.

During the meet and confer process prior to filing the Second Motion to Compel,

Berkshire's counsel disclosed these concerns to plaintiff's counsel.  In a letter dated September

21, 2007, Ms. Yates informed Mr. Silvern:

> [O]ne of my IT professionals contacted Mr. Mitchell [of the
> University of Denver] directly, who reported that the emails and
> attachments were too voluminous to put on a CD, so he had to
> store them on a DVD.  Based on educated estimates, this means
> that, if printed, the files would probably be at least 50,000 pages.
> Your production of 10 email strings, an inch of attachments, and a
> privilege log of 135 emails does not come close to what was given
> to you by DU.

Second Motion to Compel at Exh. J [Doc. # 257-3].  After conducting tests on the DVD,

Berkshire's counsel again addressed the inadequacy of the plaintiff's production in a letter dated

October 2, 2007:

> On September 4 and September 21, 2007, I wrote to you regarding
> Ms. Garcia's failure to turn over the emails and other computer
> records produced by the University of Denver.  As an
> accommodation, you allowed the DVD to be released to me on the
> condition that I not look at the substance.  As we agreed, I released
> the DVD to my IT technician for the purpose of determining the file
> types and sizes on the DVD.  The results revealed more than 4,000
> emails, with more than 1500 attachments of various types.  Your
> production of 10 emails, and a privilege log with 135 other emails--
> and your representation that this was all that was on the DVD--is
> extremely troubling and points again toward deception.

8

Second Motion to Compel at Exh. K [Doc. # 257-3].

Even in the face of Berkshire's extensive efforts during the meet and confer process and its frank disclosure of what it had learned through its investigation, plaintiff's response to the Second Motion to Compel essentially is to plead technical incompetence with respect to computers:

> Plaintiff received a DVD containing Ms. Garcia's emails on August 29, 2007, from the University of Denver. Plaintiff's counsel immediately tried to access the information on the DVD, but encountered software issues. Counsel eventually found what it believed to be the proper software and accessed the contents of the DVD. Plaintiff was not, apparently, able to access some 5,000 emails, and had no way of knowing the content of the disc except for what was displayed. Of what was displayed, Plaintiff printed and reviewed those emails and created a detailed privilege log. Plaintiff then provided Defendants, in good faith, what was believed to be all of the unprivileged and responsive emails.
>
> *   *   *
>
> Neither Plaintiff, nor counsel, has intentionally tried to prevent the disclosure of non-privileged, relevant and responsive emails. The later consideration is important. Defendants have not requested (and are not entitled to) every email ever sent by Ms. Garcia, from her University account or elsewhere, regardless of topic. The request at issue was limited to emails relating to this lawsuit, and Ms. Garcia's health. Plaintiff cannot, therefore, simply "turn over" the DVD without turning over irrelevant, non-responsive, personal and privileged emails, including emails to present (and past) legal counsel. Further, and simply stated, Plaintiff was unable to access all of the data allegedly contained on the DVD with the software employed to provide all responsive emails. . . . Unfortunately, Plaintiff's counsel does not employ a full time computer technician, [sic] occasionally a technology issues [sic] arises which exceeds Plaintiff's computer expertise. When those events arise, counsel works to obtain an understanding and familiarity with the software and medium. Plaintiff, in good faith, believed that all the unprivileged, relevant emails had been submitted. <u>If</u> there are in fact additional emails on the DVD, plaintiff was unaware of this. However, there was certainly no attempt to hide any of the content.

9

Plaintiff's Response to Defendants' Motion to Compel Production of Electronic Discovery from Plaintiff [Doc. # 267, filed 10/30/2007] at ¶¶1, 5.

Plaintiff's claim that she acted in good faith with respect to the contents of the DVD goes only so far.  Perhaps plaintiff's counsel can be heard to plead technical ignorance or mistake in his initial dealings with the DVD, but by September 21, 2007, upon the receipt of Ms. Yates' letter, he was on notice of the potential problem and was obligated to seek competent professional assistance to ascertain the truth about the contents of the DVD.  He did not do so, and apparently still has not done so, in view of his expressed doubt,[6] unsupported by any evidence, that the DVD contains substantial additional material.

The plaintiff also objects (at least in her response brief, although there is no evidence that such an objection was asserted earlier) to production of the DVD on the grounds that it contains "irrelevant, non-responsive, personal and privileged" information to which Berkshire is not entitled.

The federal rules of civil procedure provide the remedy for the plaintiff's concern about privileged material contained on the DVD.  Rule 26 provides:

> If information is produced in discovery that is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved.  A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being

---

[6]I infer this doubt based on Mr. Silvern's statement: "If there are in fact additional emails on the DVD. . . ."  Plaintiff's Response to Defendants' Motion to Compel Production of Electronic Discovery from Plaintiff [Doc. # 267] at ¶5 (original emphasis).

notified, it must take reasonable steps to retrieve it.  The producing
party must preserve the information until the claim is resolved.

Fed. R. Civ. P. 26((b)(5)(B).

In addition, I am not persuaded by the plaintiff's relevancy argument.  During the time the

plaintiff claimed to be totally disabled, for emotional and cognitive reasons, from working as an

executive in a real estate company or in a comparable position, she earned an undergraduate

degree, a law degree, and began work on a masters degree.  Defendants' Renewed Motion for

Sanctions [Doc. # 196, filed 7/19/2007] at p.3.  It is counterintuitive, at least, to think that

anything she wrote in an e-mail on her university account during that time period is not relevant to

the issue of her disability.  In particular, I agree with Berkshire that the e-mails are relevant

because they may show "to what extent Ms. Garcia was working or developing her businesses

during the period of claimed disability" and that "her ability to communicate effectively by email

and to develop PowerPoint presentations and spreadsheets [may] rebut her claimed inability to

think clearly and to interact socially."  Second Motion to Compel at p.5.  The plaintiff has made

no showing to the contrary.

The plaintiff argues that it would be unreasonably burdensome and expensive to require

her counsel to review the more than 5,000 e-mails for relevancy purposes.  However, discovery of

electronically stored information is proper where the benefit of the discovery outweighs the

burden, particularly in those instances where the discovery is central to resolving the issues in the

case.  Rule 26(b)(2)(C)(iii), Fed. R. Civ. P.  I already have determined that Berkshire's request

sweeps in virtually all of the disputed e-mails.  In addition, I find that the e-mails appear to

constitute crucial evidence in the case, which justifies requiring their production even if some of

them may prove to be irrelevant to the dispute.  As a further protection of the plaintiff's privacy interests, however, and should she believe it necessary, I will enter a protective order limiting the dissemination of the e-mails to Berkshire's counsel, expert witnesses, and other carefully defined persons who may need to see them in connection with Berkshire's preparation of a defense in this case.

Berkshire has attached to the Second Motion to Compel an e-mail string indicating that the plaintiff communicated with an IT employee of the University of Denver, who may have attempted to mislead Berkshire about the scope of e-mails available to be retrieved from the University's system.  Second Motion to Compel at Exh. H [Doc. # 257-3].  This e-mail string raises serious concerns.

IV.

Finally, Berkshire seeks production of some of the e-mails withheld by the plaintiff on a claim of privilege.  Second Motion to Compel at pp. 6-7.  In particular, Berkshire seeks the production of those e-mails sent or received by Leyla Del Rosario and/or Mike Garcia.  Mike Garcia is the plaintiff's brother and (apparently) was her conservator until December 12, 2006.  See Plaintiff's Response to Defendants' Motion to Compel Production of Electronic Discovery From Plaintiff [Doc. # 267] at ¶11.  Leyla Del Rosario is Mike Garcia's administrative assistant.  Id.

12

A party resisting discovery based on the attorney-client privilege or work product immunity has the burden of establishing that the privilege applies.  Peat, Marwick, Mitchell, & Co. v. West, 748 F.2d 540, 542 (10th Cir. 1984)(stating that "[a] party seeking to assert the privilege must make a clear showing that it applies"); Colorado v. Schmidt-Tiago Const. Co., 108 F.R.D. 731, 734 (D. Colo. 1985)( holding that "[t]he burden of proving the attorney-client or work-product privileges rests on the person raising that privilege").

The plaintiff asserts that the e-mails involving Mike Garcia and Leyla Del Rosario are privileged under the common interest doctrine.  As noted in Securities Investor Protection Corp. v. Stratton Oakmont, Inc., 213 B.R. 433, 435 n.1 (Bankr. S.D.N.Y. 1997):

> [C]ourts have used the term "joint defense privilege" to refer to both the joint client privilege and the common interest rule privilege. . . .  The joint client doctrine applies when clients share the same lawyer; whereas the common interest or allied lawyer doctrine applies when parties with separate lawyers consult together under the guise of a common interest or defense. Although the doctrines are conceptually different, the interchangeable use of the phrase "joint defense privilege" to refer to both of them has engendered considerable confusion.

The joint defense privilege is merely an extension of the attorney-client privilege.  Metro Wastewater Reclamation Dist. v. Continental Casualty Co., 142 F.R.D. 471, 478 (D. Colo. 1992). It confers no independent privileged status on documents or information.  Id.  "Thus, to be eligible for protection under the joint defense privilege, it must be established that the materials fall within the ambit of either the attorney-client privilege or the qualified immunity afforded to work product."  Id.

13

In this case, the plaintiff claims a common interest privilege because:

> As the assignee of the proceeds of the settlement, Mike Garcia has a common interest in the outcome of the litigation. He has supported Ms. Garcia during the pendency of the litigation and continues to do so. His repayment of her living expenses is contingent on the outcome in this lawsuit. Ms. Garcia and her brother's interest intertwine, and this constitutes a common interest for purposes of privilege.

Plaintiff's Response to Defendants' Motion to Compel Production of Electronic Discovery From Plaintiff [Doc. # 267] at ¶14.

This case is here on diversity jurisdiction. Notice of Removal [Doc. # 1, filed 8/5/2004] at ¶2. Consequently, I look to Colorado law on issues of attorney-client privilege. White v. American Airlines, Inc., 915 F.2d 1414, 1424 (10th Cir. 1990). Colorado recognizes the common interest doctrine only in "communications made between co-defendants and the attorney who represents them both, for the sake of discussing their common interests in a joint defense in civil or criminal litigation." Gordon v. Boyles, 9 P.3d 1106, 1124 (Colo. 2000). Here, neither Mike Garcia nor Leyla Del Rosario are parties to this action and there is no evidence that they share an attorney with the plaintiff. Nor does it appear that any lawyer was involved as either an author or recipient of any of the common interest e-mails. Consequently, the plaintiff has failed to prove the applicability of the common interest privilege.[7] The plaintiff must

---

[7]Even if Colorado were to recognize a common interest privilege "when parties with separate lawyers consult together under the guise of a common interest or defense," Securities Investor Protection Corp., 213 B.R. at 435 n.1, there is no evidence here that Mike Garcia or Leyla Del Rosario are represented or that their lawyer was involved in the disputed e-mails. Nor is there any evidence supporting the assertion that Mike Garcia holds an assignment to the proceeds of this litigation.

14

produce those e-mails exchanged between Mike Garcia, Leyla Del Rosario, and/or Tina Garcia for which the common interest privilege was asserted.

In addition, some documents exchanged between Leyla Del Rosario and Julie Boom are withheld on a claim of attorney-client privilege, and are now in the possession of the plaintiff. There is no evidence that Ms. Boom is a lawyer and no evidence that the plaintiff and Leyla Del Rosario were jointly represented by a lawyer. Consequently, the plaintiff has failed to establish the existence of a valid privilege with respect to these e-mails. The plaintiff must produce them.

V.

IT IS ORDERED that the First Motion to Compel is DENIED.

IT IS FURTHER ORDERED that the Second Motion to Compel is GRANTED IN PART and DENIED IN PART as follows:

GRANTED to require the production of the DVD created by the University of Denver and containing the e-mails sent or received by the plaintiff using her e-mail account at the University of Denver, subject to the provisions of Fed. R. Civ. P. 26(b)(2)(B), and excluding those e-mails to which an assertion of privilege was made on the plaintiff's privilege log and not overruled here;

GRANTED to require production of those e-mails exchanged between Mike Garcia, Leyla Del Rosario, and/or Tina Garcia for which the common interest privilege was asserted;

GRANTED to require production of those e-mails exchanged between Leyla Del Rosario and Julie Boom listed on the plaintiff's privilege log; and

DENIED in all other respects.

IT IS FURTHER ORDERED that the materials ordered produced shall be delivered to

counsel for Berkshire on or before **November 28, 2007**.

Dated November 13, 2007.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge