IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Case No. 04-cv-01619-LTB-BNB

TINA GARCIA,

Plaintiff,

v.

BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA, a wholly owned subsidiary of the
Guardian Life Insurance Company of America, and
THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, a foreign insurance
company,

Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

This matter is before me on the **Defendants' Renewed Motion for Sanctions** [Doc. #
196, filed 7/17/2007] (the "Motion for Sanctions").  The Motion for Sanctions seeks an order
dismissing the case based on the plaintiff's fraudulent actions and the plaintiff's obstructive
behavior during discovery.  I respectfully RECOMMEND that the Motion for Sanctions be
GRANTED and that the case be dismissed with prejudice.

I.

The plaintiff commenced this action in August 2004 alleging that her disability insurer,
Berkshire Insurance Company ("Berkshire"), breached in bad faith the insurance contract.
Complaint [Doc. # 1, filed 8/5/2004].  The plaintiff's initial claim for disability was premised on a
sleep disorder and on post-traumatic stress disorder arising from "an extremely intrusive
investigation by the Department of Housing and Urban Development" into the operation of the

plaintiff's business.  Plaintiff's Response to Defendant Berkshire's First Set of Interrogatories

[Doc. # 196-11, filed 7/19/2007] at p.2; Exhibit 14 to Defendants' Memorandum Brief In Support

of Motion for Summary Judgment [Doc. # 123-5, filed 3/8/2007] at p.3.  The plaintiff claims that

two subsequent events--a sexual assault by her psychiatrist in 1999 and a head injury resulting

from an auto accident in 2002--have exacerbated her claimed disability.  Plaintiff's Brief In

Support of Her Motion for (Partial) Summary Judgment [Doc. # 117, filed 3/1/2007] at ¶17.

Berkshire has paid benefits to the plaintiff for the periods July 1999 through August 2003

and February 2007 to the present.  See id. at ¶8.  Consequently, the dispute now centers around

Berkshire's failure to pay benefits for the period August 2003 to February 2007 and for delays in

failing to promptly investigate and adjudicate the plaintiff's claim in general.  Defendants'

Memorandum Brief In Support of Motion for Summary Judgment [Doc. # 120] at p.28.

II.

In the Motion for Sanctions, the defendants assert that the plaintiff has falsified or

fabricated four documents: (1) a report, purportedly authored by Patrick M. Renfro, dated

February 23, 2006, and submitted to the Colorado Board of Law Examiners, Motion for

Sanctions at Exh. C [Doc. #196-4]; (2) a letter, purportedly authored by Dr. Robert Kooken,

dated "11-14-02," recommending treatment by another psychiatrist, id. at Exh. H [Doc. #196-9];

(3) a letter, purportedly written by Earl Schoenborn, dated March 23, 2005, relied on by the

plaintiff in sworn interrogatory responses as evidence of her claims that Berkshire breached the

implied covenants of good faith and fair dealing, violated the Colorado Unfair Claim Practices

Act, and engaged in deceptive trade practices, id. at Exh. J [Doc. #196-11]; and (4) an e-mail

string between the plaintiff and Gene Lupia, composed of purported e-mails exchanged on

2

December 1, 2006, and December 14, 2006, submitted to the court at a hearing before me on February 12, 2007.  Exhibit 43 to Defendants' Memorandum Brief In Support of Motion for Summary Judgment [Doc. #128-4].  In addition, the Motion for Sanctions alleges that the plaintiff failed to produce voluminous documents in violation of my order compelling discovery and provided incomplete and elusive discovery by failing to disclose at least four business ventures undertaken by the plaintiff during the period of her claimed disability.

I held a hearing on the Motion for Sanctions on November 14, 2007.  The plaintiff testified about the falsified and fabricated documents, but she denied her involvement in the fabrication.

In particular, the plaintiff testified that she did not falsify the Renfro report and did not submit it to the Colorado Board of Law Examiners.  Although tacitly acknowledging its falsification, she offered no explanation of its origin.

Similarly, the plaintiff denied falsifying the Kooken letter and claimed to be confused by its existence.  She neither admitted nor denied its authenticity and offered no explanation of its origin.

The plaintiff admitted that she prepared a letter at Mr. Schoenborn's request which he refused to sign, but she denied that the letter in question [Doc. #196-11] is the letter she prepared.  Although the plaintiff appeared to admit that the Schoenborn letter is a fabrication, her testimony as to its origin was muddled.  At one point in her testimony, the plaintiff suggested that her brother may have fabricated the Schoenborn letter.  In any event, the plaintiff denied that she prepared the Schoenborn fabrication and offered no reasonable explanation for why she relied on it in her sworn interrogatory answers.

3

In a document captioned Plaintiff's Counsel's Remedial Disclosure [Doc. #277, filed 11/13/2007] filed on the day before the hearing, the plaintiff's lawyer admitted that the Lupia e-mail string is a fabrication, stating:

> On or about October 15, 2007, Ms. Garcia spoke on her cell-phone for a few minutes and then handed me her cell phone.
>
> A male voice on the cell phone identified himself to me as Gene Lupia. Mr. Lupia stated to me that he had not signed, and would not sign, a draft Affidavit my office had previously submitted to him, to the effect that an email dated December 1, 2006, purportedly from Mr. Lupia to Ms. Garcia, that we had attached to the draft Affidavit, had been authored by him. That email has been denominated Exhibit 43 [the falsified e-mail string] to Defendant's Motion for Summary Judgment, and is attached. He stated that the email was not his, and indicated that he did not know how to underline emails so he could not have written it.

Id. at ¶¶2-3. However, in her testimony at the hearing on the Motion for Sanctions, the plaintiff denied any part in preparing the fabricated Lupia e-mail string. Instead, the plaintiff testified:

> Q [BY THE COURT]: So your understanding is that Mr. Lupia sent you an e-mail; you received the e-mail; . . . you printed the e-mail; . . . and without making any alteration you gave that e-mail to Mr. Silvern; but Mr. Lupia says the e-mail that . . . your lawyer submitted to the court is not the e-mail that he sent?
>
> A [BY MS. GARCIA]: He says that there are some changes that . . . . It's altered. It's not the e-mail.
>
> Q: Do you have any understanding of how that could have happened?
>
> A: No sir. I have no idea.

Recording of Proceedings before Boyd N. Boland, United States Magistrate Judge, November 15, 2007 at 10:07:16 through 10:07:58.

I find the plaintiff's testimony at the hearing on the Motion for Sanctions incredible, and I refuse to rely on any of it.

### III.

#### A.   Renfro Report

I find that the plaintiff falsified a report, purportedly prepared by her vocational rehabilitation expert, Patrick M. Renfro, and submitted the falsified report to the Colorado Board of Law Examiners.

Mr. Renfro prepared an expert report in connection with his services as an expert witness in this case and forwarded it to the plaintiff on January 23, 2006, for her review.  Motion for Sanctions, Exh. C [Doc. # 196-4].  The plaintiff was able to modify the text of the report.  Id. (noting that "[y]ou can make comments on the report directly by typing in additions or changes as All Caps in the text").  One month later, the plaintiff submitted a report to the Colorado Board of Law Examiners purportedly prepared by Mr. Renfro.  The second report is similar to the first, but contains significant changes.  For example, Mr. Renfro's first report is 21 pages in length; the second Renfro report is only six pages long.

More significantly, the second report deletes Mr. Renfro's finding that the plaintiff has a "mild to moderate head injury" and reports the injury as moderate only; deletes entirely Mr. Renfro's conclusion that the plaintiff suffers from depression; alters a quotation relied on by Mr. Renfro from Dr. Dodson by adding that the plaintiff requires an accommodation of "double time"; and alters a quotation relied on by Mr. Renfro from Mr. Schroener by deleting a statement that the plaintiff suffers from, among other things, "clinical anxiety and depression."  See Motion for Sanctions at pp.5-6.

Mr. Renfro disavows any part in the preparation of the second, falsified report, testifying as follows:

> Q.  Was this report otherwise contained in your files?
>
> A.  No.
>
> Q.  Did you author it?
>
> A.  No.
>
>             *   *   *
>
> Q.  Did you know that this report was submitted to the Colorado Board of Law Examiners?
>
> A.  I had absolutely no knowledge of this report in any way, shape, or form.

Motion for Sanctions, Exh.D [Doc. # 196-5] at p.79 lines 2-6 and 18-21.

Although the plaintiff tacitly conceded in her testimony that the second Renfro report is a falsification, she offered no explanation of its origin.  Instead, in the written response to the Motion for Sanctions, plaintiff's counsel argued that the second report, regardless of its authenticity, accurately reflects Mr. Renfro's opinions and, in any event, "is not material to the issues in this case."  Plaintiff's Response to Defendants' Renewed Motion for Sanctions [Doc. #239, filed 9/24/2007] (the "Response") at ¶¶3, 5.

I am not persuaded by the plaintiff's excuse.  First, a litigant is not permitted to falsify an expert's report, even if the falsified changes are consistent with what the expert might say if asked, and particularly may not do so, as here, without telling the expert and without obtaining his consent.  Nor is it clear that the falsified report is "not material to the issues in this case."  It is possible, if not likely, that the plaintiff will offer as evidence of her disability her failure to pass the Colorado bar examination.  In this regard, I note that the plaintiff has endorsed as an exhibit on

the proposed final pretrial order the "Colorado Supreme Court's file regarding Plaintiff's efforts to be admitted to the bar," [Proposed] Final Pretrial Order [Doc. # 276-4, filed 11/12/2007] at p.16, which I assume includes the falsified report.

### B.  Kooken Letter

I find that the plaintiff falsified a letter purportedly written by Dr. Robert Kooken, a neuropsychologist and another expert witness for the plaintiff in this case.

Dr. Kooken wrote a letter at the plaintiff's request concerning the potential adverse impact resulting from the plaintiff being identified in certain court proceedings.  The letter is dated November 14, 2002, and is signed by Dr. Kooken.  Motion for Sanctions, Exh. F [Doc. # 196-7]; id., Exh. G at p.46 line 24 through p.47 line 3.  Berkshire has presented a second letter purportedly authored by Dr. Kooken.  This second, falsified letter is dated "11-14-02" and contains the statement that Dr. Kooken believes "that is [sic] medically necessary that she [the plaintiff] receive treatment from Jeremy A. Lazarus, M.D., a psychiatrist who specializes in an area that is pertinent to psychological problems she has been experiencing."  Id. at Exh. H.  The second letter (unlike the first, authentic letter) is not signed by Dr. Kooken and does not contain his licensing credentials, including his Colorado medical license number.  Id. at Exh. F.

In his deposition, Dr. Kooken testified that he does not remember preparing the second letter; does not know Dr. Lazarus; no copy of the second letter is contained in his files; and that the second letter appears irregular because it is not signed.  Id., Exh. G [Doc. # 196-8] at p.47 line11 through p.48 line 24.

The plaintiff's testimony neither admitted nor denied the authenticity of the second letter and failed to explain its origin.  In the Response, her lawyer argues that it is immaterial to any matter at issue in this case.  Response at ¶6.

It is hard at this point in the litigation to know with certainty whether the Kooken falsification is completely immaterial, as the plaintiff argues.  It does not matter.  As the court stated in Schmidt v. Ford Motor Co., 112 F.R.D. 216, 221 (D. Colo. 1986):

> Despite the barriers of technicality and quiddities of procedure which infuse our legal system at enormous cost, to insure that litigation constitutes a search for the truth, our ultimate reliance must be found in mutual trust and decency . . . . [L]itigation is not a game of hare and hounds where rules are easily bent, where truth is skirted by lies and evasions and cheap victory is sought at the expense of fairness and candor.  Even if the cynics are correct in saying that such practices are endemic to the system, it is necessary to say in this case that they will not be tolerated.

### C.  Schoenborn Letter

I find that the plaintiff fabricated a letter purportedly written by Earl Schoenborn, the agent who sold her the disability insurance policy at issue in this case.

In discovery, the plaintiff was asked the following interrogatories:

> INTERROGATORY NO. 5:   Please state, in complete detail, each, every and all facts reflecting, supporting, constituting, concerning, memorializing, evidencing, referencing and/or relating or pertaining in any way to your contention contained in paragraph 29 of your Complaint, wherein you allege that "Berkshire/Guardian's nonpayment of benefits was and is without justification, and constituted a breach of their implied covenants of good faith and fair dealing owed to [you]."

> INTERROGATORY NO. 6:   Please state, in complete detail, each, every and all facts reflecting, supporting, constituting, concerning, memorializing, evidencing, referencing and/or relating or pertaining in any way to your contention contained in paragraph 30 of your

Complaint, wherein you allege that "Berkshire/ Guardian's handling and nonpayment have constituted violations of Colorado's Unfair Claim Practices Act [C.R.S. 10-3-1104], as well as Colorado's codification of the duties of good faith and fair dealing in C.R.S. 10-3-1113."

INTERROGATORY NO. 8:   Please state, in complete detail, each, every and all facts reflecting, supporting, constituting, concerning, memorializing, evidencing, referencing and/or relating or pertaining in any way to your contention contained in paragraph 35 of your Complaint, wherein you allege that "Berkshire/ Guardian's conduct have constituted deceptive trade practices prohibited by C.R.S. 6-1-101, *et seq.*, and particularly C.R.S. 6-1-105."

Exhibit 11 to Defendants' Memorandum Brief In Support of Motion for Summary Judgment

[Doc. # 123-2] at pp.5-7 and 9.

The plaintiff answered the interrogatories under oath.  Id. at p.17.  In response to each of the interrogatories, the plaintiff referred, either directly or indirectly, to a letter allegedly written by Mr. Schoenborn to the plaintiff's brother, and she attached a copy of the letter to her interrogatory responses.  The letter contains extremely damaging statements about Berkshire, including the following:

In response to your letter, I sold Tina the Berkshire Disability Policy but please bear in mind that I am no longer a representative of Berkshire Life Insurance Company.

I left the company after Berkshire refused to honor disability claims of several female policy holders.  I was distressed, and told Tina so, to witness Berkshire's denial of legitimate claims of disabled and dying women clients.

I can testify based on personal knowledge that Berkshire used unfair business practices contrary to policy provisions in order to delay or deny payment of valid claims.  Berkshire's tactics include 'stall and starve', delay pay' (on the courthouse steps) and manipulate claimant's attorney to advocate taking a settlement

> paying back benefit and lawyers without recovery for the financial
> damages.
>
> *   *   *
>
> At your request, I contacted an associate still employed in
> Berkshire's disability claims division and discovered Berkshire's
> only defense against the bad faith claim is that Tina completed law
> school.  This of course is not a defense under the terms and
> provisions of the policy. . . .  I am prepared to testify and look
> forward to speaking with the lawyers you retained on behalf of
> Tina.

Id. at p.18.

The letter is a fabrication.  Mr. Schoenborn repudiated the letter in an affidavit, stating

that "I did not write that letter and the letter contains false statements that I do not agree with and

which should not be attributable to me."  Exhibit 41 to Defendants' Memorandum Brief In

Support of Motion for Summary Judgment [Doc. # 128-2] at ¶9.  Similarly, in his deposition, Mr.

Schoenborn disavowed any involvement in writing the falsified letter, and testified:

> Q.  . . . Is it the letter you sent to Mr. Garcia?
>
> A.  No. Absolutely not.  Absolutely, completely, definitively,
> totally, absolutely not.  I did not write that letter.  I wrote only the
> first paragraph.
>
> Q.  What are some of the differences you see in the appearance of
> the letters?
>
> A.  The entire body of the letter is different.
>
> *   *   *
>
> Q.  In the letter that the Garcias produced, are the second and third
> paragraphs included anywhere in the letter you originally drafted?
>
> A.  Absolutely not.  The only thing that's included in the letter I
> originally drafted is the phrase that starts the first paragraph, in
> your response to your letter.  Other than that, there is nothing there
> that I had written.

Motion for Sanctions, Exh. I at p.40 line 15 through p.41 line 2; p.43 lines 11-18.

Although the plaintiff in her testimony appeared to admit that the Schoenborn letter is not authentic, she equivocated as to its origin, sometimes accusing her brother of the fabrication.  In the end, however, the plaintiff offered no adequate explanation for the fabricated letter or her reliance on it in sworn interrogatory answers.

### D.  Lupia E-Mail

I find that the plaintiff fabricated the e-mail string involving Gene Lupia of CH2M Hill.

The e-mail string begins with a purported message from Mr. Lupia to the plaintiff dated "Fri 12/1/2006 6:47 AM" which states:

> A woman by the name of Rachael Yates, from Holland and Hart, left a message and just sent me an email
>
> She wants to know if you <u>forged</u> my name on the letter I sent to your law school.
>
> She must not know you, what's this about?.

Exhibit 43 to Defendants' Memorandum Brief In Support of Motion for Summary Judgment [Doc. # 128-4].  The string contains a purported response from the plaintiff to Mr. Lupia 13 days later, on December 14, 2006.  <u>Id</u>.

The unrefuted evidence, however, is that Ms. Yates first contacted Mr. Lupia and sent him an e-mail on December 14, 2006, not December 1, 2006. Ms. Yates' e-mail to Mr. Lupia states merely:

> Thank you so much for your willingness to speak with me. Attached is a file with both the signed and unsigned versions of the letter of reference.  Can you please confirm this was the letter you provided to her.

11

Exhibit 44 to Defendants' Memorandum Brief In Support of Motion for Summary Judgment

[Doc. # 128-5].  The original message in the e-mail string, dated December 1, 2006, is a

fabrication.  Plaintiff's counsel admitted as much in the Remedial Disclosure. Plaintiff's Counsel's

Remedial Disclosure [Doc. # 277] at ¶¶2-3.[1]

     The fabricated e-mail string was presented to me at a hearing held on February 12, 2007,

as a part of the plaintiff's explanation for why attorney fees should not be assessed against her in

connection with my order granting in part a motion to compel discovery.  <u>See</u> Order [Doc. # 113,

filed 2/12/2007].  The transcript of those proceedings includes the following:

> [MR. SILVERN:]  I did bring with me some documents reflecting
> some of the reasons why we have had trouble being more timely
> responding to discovery, and these consist of an [excerpt] from a
> transcript of the deposition of one of the plaintiff's treating mental
> health providers . . . and also a fairly lengthy letter from the
> psychiatrist presently treating the plaintiff. . . .
>
> Both explained their reservations regarding providing their
> treatment notes and records and also explained why Ms. Garcia had
> so much difficulty in participating in the litigation and helping with
> the discovery process. . . .
>
> Also and adding to the plaintiff's anxiety regarding giving up
> documents is--and I have a note or a copy of an e-mail from Mr.
> Gene Lupia . . . indicating that the defense contacted him in
> response to a document that had--was supposed to have been
> produced some time back--in effect asking if Ms. Garcia had
> forwarded the letter he had written.  And that certainly added to
> Ms. Garcia who also suffers from posttraumatic stress disorder and
> extreme anxiety regarding the provision of documents that if
> misused could be embarrassing.
>
> And if I might approach the bench, I'd like to–

---

[1]The Plaintiff's Counsel's Remedial Disclosure is quoted at p. 4, <u>supra</u>.

THE COURT:   You may.

MR. SILVERN:  --tender those documents, if I may.

Transcript of Proceedings before Boyd N. Boland, United States Magistrate Judge, February 12,

2007 [Doc. # 135, filed 3/21/2007] at p.3 line15 to p.4 line 12.

On November 12, 2007, the plaintiff executed an affidavit and filed it with the court the

following day.  The plaintiff's affidavit equivocates and muddies the issue rather than clarifying.

It states:

> I am the Plaintiff in this action.
>
> Gene Lupia forwarded an email correspondence between Rachel
> Yates, Esq., and him, in which Ms. Yates questioned the validity of
> a letter of recommendation General Lupia had written on my behalf.
>                          *     *     *
> General Lupia has since told me that the email, attached hereto,
> marked Exhibit 43 to Defendant's Motion for Summary Judgment,
> was not the exact email that he forwarded to me.

Affidavit of Tina Garcia [Doc. # 277-2, filed 11/13/2007] at ¶¶1-2, 4.  Moreover, the plaintiff's

explanation of the Lupia e-mail string during her testimony at the hearing, see p. 4 supra, is

incredible.

In her Response, the plaintiff argues:

> That email has no relevance whatsoever to any disputed issue in this
> case.  Even if it were fabricated, it is not material, let alone
> significant, to any issue in this case, and therefore cannot be
> grounds for any sanction, let alone a dispositive sanction.

Response at ¶9.

I disagree.  The great significance of the Lupia e-mail string is that it demonstrates that the

plaintiff's willingness to lie knows no bounds.  She is willing equally to prepare a false letter from

her doctor for no apparent reason or benefit; falsify a report and submit it to the Colorado Board of Law Examiners; rely on a fabricated letter in sworn discovery responses in this case; and submit false evidence in open court.  The plaintiff's conduct is destructive of the justice system and is intolerable.

IV.

In addition to creating false documents, I find that the plaintiff has obstructed discovery by failing to reveal crucial evidence relevant to the defense of her claims.

I ordered the plaintiff to respond to the defendants' outstanding discovery requests, including requests for production of documents, by February 15, 2007.  Order [Doc. # 113, filed 2/12/2007].  The parties agree that the plaintiff has more than 21 boxes of documents relating to this action, see Response at ¶11, but no more than four boxes have been produced to the defendants.  Motion for Sanctions at p.16.  The plaintiff argues in her Response that the "[d]efendants' complaint that it [sic] was not allowed unfettered access to the documents is disingenuous" because the boxes include "attorney work product, attorney-client communications, and documents sealed by the Denver Probate Court."  Response at ¶11.  No privilege log or log of sealed documents has been provided to the defendants, however.  Defendants' Reply In Support of Renewed Motion for Sanctions [Doc. # 266, filed 10/24/2007] at pp.12-13.

A party resisting discovery based on a claim of privilege has the burden of establishing that the privilege applies.  Peat, Marwick, Mitchell & Co. v. West, 748 F.2d 540, 542 (10th Cir. 1984); Colorado v. Schmidt-Tiago Construction Co., 108 F.R.D. 731, 734 (D. Colo. 1985).  Under Fed. R. Civ. P. 26(b)(5), when a party withholds documents or other information based on

14

the attorney-client privilege or work product immunity, the party "shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." To satisfy the burden established by Rule 26(b)(5), the party asserting the privilege must provide a privilege log that describes in detail the documents or information claimed to be privileged and the precise reasons the materials are subject to the privilege asserted. See McCoo v. Denny's, Inc., 192 F.R.D. 675, 680 (D. Kan. 2000). The information provided in the privilege log must be sufficient to enable the court to determine whether each element of the asserted privilege is satisfied. Id. Here, no privilege log has been provided; the plaintiff has failed either to produce the documents ordered produced or to establish a privilege; and she has failed to comply with my order of February 12, 2007.

The plaintiff also has provided incomplete and elusive discovery responses. In particular, the written discovery includes the following:

> INTERROGATORY NO. 12: Please describe with particularity your daily activities from the date you allege to have become totally disabled to the present, including any and all work activity in which you have engaged and the last date you performed any duties in your occupation.

> ANSWER: . . . Plaintiff has been attending law school most of the time and had an internship with Colorado Attorney General's Office, Denver, Colorado. She attends doctor appointments, does some volunteer work, and deals as best as she can with her pending legal proceedings. She has twice attempted the bar exam but has been unable to pass it. Plaintiff also participates in physical, emotional and psychological medical appointments as reflected in her medical records. Socialization is also part of Plaintiff's

mental/emotional recovery per her doctors' advice, and Plaintiff therefore attends occasional social activities.

Motion for Sanctions at Exh.J.

> REQUEST [FOR PRODUCTION] NO. 3:   Please produce any and all documents, writings, records, and/or correspondence including, but not limited to, contracts, ledgers, profit and loss statements, invoices, bills, state and federal tax returns, including any drafts and/or schedules, accounts receivable, accounts payable, and/or any other documents relating to any business with which you were affiliated as an owner, employee, self-employed individual, and/or investor from January 1, 1995 through present.
>
> *   *   *
>
> REQUEST NO. 12:   Please produce any and all contracts, agreements and/or other writings entered into with any entity(ies) and/or individual(s) who worked for your business with which you were affiliated, as either an owner, employee, and/or independent contractor during the period commencing January 1, 1995 to the present, including but not limited to, all updates, renewal provisions, amendments, or attachments to such agreements.

Exhibit A to Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment [Doc. # 136-2, filed 3/21/2007].

Notwithstanding these requests, the plaintiff failed to disclose that she created and acted as the chief executive officer of a business known as Integrated Legal Contract Support, which was incorporated in March 2006.  Motion for Sanctions, Exh. K at pp.1-4; id. at Exh L.  Nor did the plaintiff disclose that she was the president and chief executive officer of MilitaryHousing.com from 1999 through 2004.  Motion for Sanctions, Exh. K at p.5.  Nor did the plaintiff disclose the Business Plan: Technology Phase of Military Housing Market Strategy which she prepared for presentation to Dave Rosenblum of CH2M Hill.  Exhibit 16 to Defendants' Memorandum Brief In Support of Motion for Summary Judgment [Doc. # 124-2].  Nor did the plaintiff disclose the Memorandum of Understanding Between Colorado AFA and Special Properties, Inc. (SPI), dated

16

March 1, 2000.  Exhibit 19 to Defendants' Memorandum Brief In Support of Motion for

Summary Judgment [Doc. # 125-4].  To the contrary, Berkshire was required to uncover these

business activities through its own investigation.

   The plaintiff attempts to excuse her failures to make truthful discovery responses by

arguing that the materials uncovered by Berkshire but not revealed by the plaintiff either are not

real business activities or were unsuccessful:

> Their [Berkshire's] "evidence" [of concealed business activities]
> consists of a paper she [the plaintiff] prepared for a class in law
> school.  The "memorandum of understanding" with the Air Force
> base never went anywhere, and it was a colleague of the Plaintiff,
> Russ Scott, who was attempting to put a deal together.

Response at ¶13.

   I am not persuaded.  First, it is not clear to me which of the undisclosed business efforts

the plaintiff considers to be a "paper" prepared for a law school class.  I find, however, that the

Integrated Legal Contract Support materials constitute a genuine attempt to establish a business

entity, which the plaintiff was required to disclose in her discovery responses.  The plaintiff

incorporated the entity, Motion for Sanctions, Exh.L.; created a website, id. at Exh.K; and held

Integrated Legal Contract Support out to the world as a going business concern.  Id.  It is no

excuse for the plaintiff's failure to disclose the Memorandum of Understanding with Colorado

AFA that the relationship "never went anywhere."  Berkshire did not request information about

successful business efforts; it sought documents "relating to any business with which you were

affiliated as an owner, employee, self-employed individual, and/or investor. . . ."  Exhibit A to

Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment [Doc. # 136-2, filed

3/21/2007] at Request [For Production] No. 3.  What the plaintiff did and was capable of doing

during her period of claimed disability is relevant to Berkshire's defense, not necessarily whether those efforts were successful.

V.

This is an especially egregious case.  The plaintiff fabricated at least four documents over a period of five years.  The fabrications began in November 2002 with the falsified Kooken letter; followed in March 2005 with the fabricated Schoenborn letter; followed next by the falsified Renfro report dated January 2006; and ending with the fabricated Lupia e-mail dated December 2006 but provided by the plaintiff to her lawyer for use in court in February 2007.  Even when confronted with overwhelming evidence of her misdeeds in the Motion for Sanctions and at the hearing on that motion, the plaintiff refused to admit her role in the preparation and use of the false documents.

At least the falsified Renfro report, which is in the file of the Colorado Board of Law Examiners and designated as an exhibit for trial, and the fabricated Schoenborn letter, relied on in interrogatory answers submitted by the plaintiff under oath, are directly relevant to the plaintiff's claims at trial.  The Lupia e-mail already was submitted to the court in connection with a discovery motion.  As a result of the proven fabrications, and the plaintiff's propensity to prepare false documents acknowledged by both her lawyer and her treating psychiatrist at the hearing on the Motion for Sanctions, substantial doubt exists as to the authenticity of any document relating to this case.

The suggestion by plaintiff's lawyer that the fabrications and the plaintiff's willingness to lie and to hide evidence are delusional acts of uncontrollable impulse are belied by the facts.  The fabrications were prepared over a period of years and are calculating, carefully constructed, and

18

self-serving.  The plaintiff's treating psychiatrist admitted that the plaintiff understands the

difference between right and wrong and that although she might act on an impulse, she would

with time recognize that she had fabricated evidence and understand the impropriety of that

conduct.  These fabrications are not the product of impulse.  It took considerable time, effort, and

skill to alter the Renfro report from 21 pages to six; to falsify the document in such a way that it

still made sense; and to carefully remove some damaging information and to add other helpful

information.  Similarly, the Schoenborn letter is carefully constructed.  The plaintiff not only

fabricated its contents, but she did it in a way to make it appear to be on Mr. Schoenborn's

letterhead.  The Lupia e-mail was fabricated in a sinister effort to besmirch opposing counsel in

the eyes of the court.  I find that the fabrications were prepared by the plaintiff willfully,

knowingly, intentionally, after careful contemplation, for self-serving purposes, and with a full

understanding of the impropriety involved.

## VI.

Courts have inherent equitable powers to dismiss actions as a sanction for abusive

litigation practices.  Roadway Express, Inc. v. Piper, 447 U.S. 752, 764-65 (1980); TeleVideo

Systems, Inc. v. Heidenthal, 826 F.2d 915, 916 (9th Cir. 1987).  Without doubt, fabricating

evidence and willfully providing false answers during discovery are abusive litigation practices

which justify the sanction of dismissal with prejudice.  Archibeque v. Atchison, Topeka and Santa

Fe Railway Co., 70 F.3d 1172, 1175 (10th Cir. 1995); Schmidt v. Ford Motor Co., 112 F.R.D. at

218; REP MCR Realty, L.L.C. v. Lynch, 363 F. Supp. 2d 984, 1010 (N.D. Ill. 2005), aff'd 200

Fed. Appx. 592 (7th Cir. 2006); McDowell v. Seaboard Farms of Athens, Inc., 1996 WL 684140

*2 (M.D. Fla. Nov. 4, 1996).

Before a district court may impose the severe sanction of dismissal, however, it must evaluate the misconduct based on the factors established in Ehrenhaus v. Reynolds, 965 F.2d 916 (10th Cir. 1992).  The factors include (1) the degree of actual prejudice to the defendants; (2) the amount of interference with the judicial process; (3) the culpability of the plaintiff; (4) whether the court warned the plaintiff in advance that dismissal of the action would be a likely sanction; and (5) the efficacy of lesser sanctions.  Id. at 921.  The circuit court has recognized that these factors are not a rigid test, and the determination of an appropriate sanction is a fact specific inquiry that the district court is in the best position to make.  Archibeque, 70 F.3d at 1174.

A.  Degree of Actual Prejudice

The actual prejudice to the defendants is overwhelming.  They have been required to defend a lawsuit based on false evidence.  Nothing can be relied on as authentic--from the plaintiff's expert reports; to evidence offered in support of her interrogatory answers; to the completeness of her discovery responses; to the evidence offered to the court.  The defendants have been put to enormous additional effort and expense to ferret out the plaintiff's lies and to double check every piece of information and evidence.  I have absolutely no confidence that the plaintiff would not attempt to offer additional false evidence at a trial.[2]  The risk that this court might issue judgment against the defendants based on the plaintiff's fabrications and lies is simply too great to allow the case to proceed.

Here, as in Pope v. Federal Express Corp., 138 F.R.D. 675, 683 (W.D. Mo. 1990), aff'd in part and vacated in part 974 F.2d 982 (8th Cir. 1992):

---

[2]I do not suggest that Mr. Silvern would intentionally offer false evidence or suborn perjury.  He has been duped by his client once into offering false evidence, however, and I find that the risk is great that the same could happen again.

Permitting this lawsuit to proceed would be an open invitation to abuse the judicial process. Litigants would infer they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues. Litigants must know that the courts are not open to persons who would seek justice by fraudulent means.

## B.   Interference With the Judicial Process

The plaintiff's deceit infected all of the pretrial procedures and interfered egregiously with the court's administration of justice. The Motion for Sanctions alone required most of a day to hear. The district judge will have to review my recommendation. The case has involved several motions to compel, at least some of which are directly or indirectly the result of the plaintiff's misconduct in the discovery process. At trial, the district judge will have to be hyper-vigilant against false evidence.

As the court noted in Eppes v. Snowden, 656 F. Supp. 1267, 1277 (E.D. Ky. 1986):

[T]ampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society.

## C.   Culpability of the Plaintiff

The plaintiff has intentionally lied and manufactured evidence. She has acted willfully and in bad faith. In the face of overwhelming evidence, the plaintiff has stubbornly refused to admit her misconduct. She has cast blame on others, including her brother. She lied in her responses to my questions at the hearing on the Motion for Sanctions. Greater culpability is difficult to imagine.

21

D.   Whether the Plaintiff Was Warned

There was no prior warning of the possible sanction of dismissal.  No such warning is necessary here, however, because among other things the plaintiff relied on fabricated evidence in interrogatory answers made under oath:

> [B]ecause the perjurious testimony was given under oath, an additional warning would have been superfluous at best.  Once a witness swears to give truthful answers, there is no requirement to warn him not to commit perjury or, conversely to direct him to tell the truth.  It would render the sanctity of the oath quite meaningless to require admonition to adhere to it

Chavez v. City of Albuquerque, 402 F.3d 1039, 1045 (10th Cir. 2005)(internal quotation and citation omitted).

E.  The Efficacy of a Lesser Sanction

The egregious nature of the plaintiff's misconduct requires dismissal.  Although I have considered imposition of a monetary sanction, exclusion of falsified evidence, and exclusion of testimony, only dismissal will serve as a sufficient deterrent to those, like the plaintiff, who would manufacture evidence and attempt to cover it up.  Only dismissal will serve as universal notice that this conduct will not be tolerated and that "the courts are not open to persons who would seek justice by fraudulent means." Pope, 138 F.R.D. at 683.

VII.

I respectfully RECOMMEND that the Motion for Sanctions be GRANTED and that the plaintiff's claims and this action be DISMISSED WITH PREJUDICE as a sanction for the plaintiff's abusive litigation practices.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), the parties have ten days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated November 16, 2007.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge