IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 04-cv-01619-LTB-BNB

TINA GARCIA,

        Plaintiff,

v.

BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA, a wholly owned Subsidiary of The
    Guardian Life Insurance Company of America, and
THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, a foreign Insurance Company,

        Defendants.
_____

ORDER
_____

This matter is before me on a Motion for (Partial) Summary Judgment [**Doc # 116**] filed by Plaintiff, Tina Garcia, and a Motion for Summary Judgment [**Doc # 119**] filed by Defendants, Berkshire Life Insurance Company of America and The Guardian Life Insurance Company of America (collectively, "Berkshire"). In addition, I also consider Plaintiff's Objections [**Doc # 304**] to the Amended Recommendation of United States Magistrate Judge [**Doc #296**], recommending that Berkshire's Renewed Motion for Sanctions [**Doc #196**] be granted for abusive litigation practices and the case dismissed with prejudice.

This case must be dismissed upon the following separate and independent grounds. Oral arguments will not materially aid in the resolution of these motions and objections to the Amended Recommendation. After consideration of the parties' briefs and related attachments, I DENY Plaintiff' motion for partial summary judgment and I GRANT Berkshire's motion for summary judgment. I likewise DENY Plaintiff's Objections, ADOPT the Magistrate's

Recommendation and, as such, I GRANT Berkshire's Amended Motion for Sanctions. As a result, I DISMISS this case with prejudice.

## I. FACTS

This matter involves a private long term disability insurance policy purchased by Plaintiff from Berkshire in December of 1991. Plaintiff applied for total disability benefits under the policy on November 28, 1999, claiming that she was disabled due to a sleep disorder, post-traumatic stress disorder, and an adult attention deficient/hyperactivity disorder.

On August 5, 2002, Berkshire paid Plaintiff past benefits for the period of July 6, 1999 through August 5, 2002, after Plaintiff executed a Claims Release Agreement. Subsequently, in April of 2003, Berkshire paid Plaintiff benefits for the period of August 2002 through April 2003, under a reservation of rights. Finally, in September of 2003, Berkshire again paid Plaintiff benefits, under a reservation of rights, for the period of April 2003 through August 2003. At that time, Berkshire ceased paying disability benefits to Plaintiff.

As a result, Plaintiff filed this lawsuit against Berkshire in Boulder County District Court in July 2004. The case was subsequently removed to this court based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Plaintiff asserts claims for relief: 1) for "Bad Faith and Breach of an Insurance Contract" and 2) for violation(s) of the Colorado Consumer Protection Act, based on Berkshire's failure to pay disability benefits.

On September 5, 2007, during the pendency of this case, Berkshire approved and paid Plaintiff's pending claim for disability benefits for the period of February 1, 2007 to October 1, 2007. Therefore, at issue is the time period from August 6, 2003 through February 1, 2007 (a period of three years and five months) during which time Berkshire denied Plaintiff's claim for

disability benefits on the basis that she failed to comply with the "proof of loss" provisions in the policy.

## II. STANDARD OF REVIEW

The purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Fed. R. Civ. P. 56(c) provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Id.* at 323; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir. 1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 324.

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Id.* at 323. The operative inquiry is whether,

based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Id.* at 252; *Mares v. ConAgra Poultry Co., supra,* 971 F.2d at 494.

### III. BREACH OF CONTRACT/BAD FAITH CLAIM

In her first claim for relief, Plaintiff seeks damages for Berkshire's "Bad Faith and Breach of an Insurance Contract." Read broadly, this claim encompasses the following alternative claims under Colorado law: "a contract action for ordinary and/or willful breach of the insurance contract; [and] a tort action for bad faith breach of the insurance contract . . .". *Goodson v. American Standard Ins. Co. of Wisconsin,* 89 P.3d 409, 413 FN. 2 (Colo. 2004); *see also Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 571 (Colo. App. 2003)("[c]laims for bad faith breach and willful and wanton breach of an insurance contract sound in tort . . .[t]hese claims exist independently of the liability imposed by an insurance contract").

**A. Breach of Contract:**

Plaintiff seeks partial summary judgment in her favor on her "Breach of Contract claim *only*." Plaintiff asserts that Berkshire's failure to pay benefits on her claim for the period of August of 2003 through February of 2007 constitutes a breach of their insurance contract because she has adequately complied with the "proof of loss" requirements in the policy.

The policy at issue is a lifetime own-occupation disability policy. As such, Plaintiff is entitled to a monthly indemnity for long term disability benefits for as long as she is unable to

4

work in her own occupation. Under the policy, a "total disability" means "that due to injury or sickness you are unable to perform the material and substantial duties of your occupation and you are not engaged in any occupation in which you might reasonable be expected to engage with due regard for your education, training, experience and prior economic status."

In order to obtain benefits, the insured must submit "proof of loss" which is set forth in the policy as follows:

> We must receive written proof of loss at our home office within ninety days after the end of the period for which we are liable. If such proof is not furnished within the time required, this will not invalidate or reduce any claims if it was not reasonably possible to get proof within such time. Proof which is furnished later than one year from the time it is otherwise required will not be deemed valid except in the absence of legal capacity.

The policy further requires that "[w]hen we receive a notice of a claim, we will furnish to the claimant our usual forms for filing proof of loss." Finally, the policy states that "[a]ny benefits to be paid under this policy other than as periodic payments will be paid immediately when we receive written proof of such loss." *See also* Colo. Rev. Stat. § 10-16-202(9)(requiring such provision in individual sickness and accident policies).

The facts related to the "proof of loss" provided by Plaintiff to Berkshire are as follows. On August 8, 2002 – directly after paying past disability benefits through August 2002 under a reservation of right – Berkshire requested from Plaintiff the following forms in order to review her ongoing benefit eligibility: a blank progress report to be completed by Plaintiff and her current attending physician on a monthly basis; an "Authorization to Obtain Information" form for Plaintiff's signature; and a requested list of Plaintiff's treatment providers from July 6, 1999 to date. Over the course of the next six months, Berkshire requested that Plaintiff execute its

unrestricted medical authorization form ten separate times. Berkshire finally received an authorization form – signed by Plaintiff seven months later on March 14, 2003 – and Berkshire subsequently forwarded the authorization to Plaintiff's medical providers.

However, after Berkshire sent its third request for medical records to LaVada Glass, Plaintiff's treating therapist, Plaintiff revoked her authorization on October 15, 2003. Berkshire then contacted Plaintiff's counsel for a new authorization, as well as assistance in obtaining records from other unresponsive physicians, on November 24, 2003. Plaintiff signed a new authorization four months later, on April 8, 2004, but Berkshire did not receive that authorization until December of 2004, after it was countersigned by Plaintiff's conservator. In the meantime, Plaintiff had filed this lawsuit in July of 2004.

With this new authorization, Berkshire requested medical records from Plaintiff's treating psychiatrist, Dr. Gordon Neligh, in March and April 2005. On April 12, 2005, Dr. Neligh informed Berkshire that Plaintiff had revoked her current authorization which, additionally, was not compliant with the Health Insurance Portability and Accountability Act. Subsequently, on May 2, 2005, Ms. Glass provided Berkshire with a portion of her medical records after receiving the new authorization. At this point, on May 9, 2005, the parties stipulated to a stay of these proceeding in order for Berkshire to obtain Plaintiff's medical records. Plaintiff's counsel forwarded an incomplete copy of Dr. Neligh's records to Berkshire on July 6, 2005.

On December 5, 2005, Plaintiff failed to appear for a scheduled Independent Medical Examination (IME) with a board certified neuropsychologist. Plaintiff maintains that she never confirmed that she would be able to attend the scheduled IME. However, she does not dispute that she was aware of the scheduled IME, nor did she submit to an IME until February 2007.

In January 2006, the parties agreed to settle this matter after a mediation and, as a result, this lawsuit was again stayed. Plaintiff subsequently disavowed the settlement and, as a result, Berkshire again requested a new authorization form from Plaintiff several times in November of 2006. Plaintiff did not sign the authorization form provided by Berkshire, but rather submitted alterative releases which only allowed that a "summary of care" be released by both Ms. Glass and Dr. Neligh. Berkshire responded by filing a motion to compel in this case. In her response to the motion, on January 31, 2007, Plaintiff finally provided signed authorizations as requested. Berkshire asserts that the day after the hearing on the motion to compel, Plaintiff revoked the full authorization when it was provided to the Colorado Board of Law Examiners. Then, after Berkshire protested, Plaintiff reaffirmed the authorization in February of 2007.

Also in February of 2007, Plaintiff provided Berkshire with a list of medical providers with at least ten new doctors listed, and produced discovery responses identifying additional medical providers. She subsequently submitted another updated list of her medical providers. In addition, Plaintiff finally submitted to an IME on February 1 and 2, 2007. The resulting neuropsychological assessment report, which was favorable to Plaintiff's claim that she was disabled at the time of the examination, was issued on April 30, 2007, and then augmented on May 5, 2007. In a letter dated September 5, 2007, Berkshire approved Plaintiff's pending claim as of February 2007 through October 2007. For the period of August 6, 2003 until February 1, 2007 (the date of her IME), Berkshire indicated that it was "compelled to deny any liability . . . because of your failure to comply with critical policy provisions" and because "as a result of our litigation with you, we have also learned you were engaged in activities during the aforementioned time period which were inconsistent with your claim to be totally disabled."

7

Plaintiff contends that she is entitled to summary judgment on her breach of contract claim because Berkshire's failure to pay benefits for the period at issue constitutes a breach of their insurance policy as a matter of law. I disagree. Conversely, Berkshire maintains that it is entitled to summary judgment in its favor on the basis that Plaintiff did not comply with the insurance contract proof of loss requirements and, as such, it did not breach their insurance policy as a matter of law. I agree.

The policy language requires written proof of loss, which is further defined as the "usual forms for filing proof of loss" as "furnished" by Berkshire. Such proof of loss should be provided within 90 days, unless it "was not reasonably possible to get proof within such time." Although it is clear that no specific proof requirements are set forth in the policy, and there is evidence that Berkshire has no specific policy related to its proof of loss requirements, the requisite proof required in each individual claim is necessarily different.

Here, the undisputed facts demonstrate that Plaintiff had not provided Berkshire with the requisite authorization forms to establish proof of loss, as necessitated by the circumstances of her claim, until February of 2007. As in the past – for the period from July 6, 1999 through August 5, 2002 – once the forms were provided and Plaintiff submitted to an IME, Berkshire processed and approved her claim from that time forward. The claims assessment was complicated by at least two stays in this lawsuit, an unclear conservatorship status in a sealed probate proceeding, and a settlement that was ultimately disavowed by Plaintiff. Most significantly, Plaintiff's failure to appear or reschedule an IME, as requested by Berkshire in December of 2005, as is required by the policy, precludes any claim by Plaintiff of a breach by Berkshire in the claims process during the relevant time period. Plaintiff's obdurate actions and omissions in processing her claim –

including her refusal to sign and/or revocation of her various records authorizations, her health care providers' refusal to provide complete medical records, and her delay in submitting to an IME – resulted in a failure to provide proof of loss before February of 2007. No reasonable trier of fact could conclude otherwise.

Accordingly, I conclude that Plaintiff is not entitled to summary judgment on her breach of contract claim but, rather, Berkshire is entitled to judgment as a matter of law on Plaintiff's claim of breach of their insurance contract.

**B. Tort Claim for Bad Faith Breach**:

Berkshire also asserts that it is entitled to summary judgment on Plaintiff's tort-based claim for bad faith breach of the insurance policy.

Colorado law provides that an insurer owes the insured a non-delagable duty of good faith and fair dealing, the breach of which gives rise to a separate cause of action in tort. *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003); *see also* Colo. Rev. Stat. § 10-3-1113(1). Colorado Revised Statue Section 10-3-1113(3) provides that "[u]nder a policy of first-party insurance, the determination of whether the insurer's delay or denial was reasonable shall be based on whether the insurer knew that its delay or denial was unreasonable or whether the insurer recklessly disregarded the fact that its delay or denial was unreasonable."

Therefore, for an insured to prevail on a first-party tortious bad faith breach of contract claim against the insurer, the insured must establish that the insurer acted: (1) unreasonably and (2) with knowledge of or reckless disregard of its unreasonableness. *Dale v. Guaranty Nat. Ins. Co.*, 948 P.2d 545, 551 (Colo. 1997); *see also Travelers Ins. Co. v. Savio,* 706 P.2d 1258, 1261 (Colo. 1985); *Burgess v. Mid-Century Ins. Co.*, 841 P.2d 325, 328 (Colo. App. 1992)(bad faith

9

conduct occurs when an insurer intentionally denies a claim without a reasonable basis). Whether an insurer has in bad faith breached its duties to an insured is a determination of "reasonableness under the circumstances." *Pham v. State Farm Mut. Auto. Ins. Co., supra*, 70 P.3d at 572. That is, "would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances." *Id.* (*quoting Farmers Group, Inc. v. Trimble*, 691 P.2d 1138, 1142 (Colo.1984)). Bad faith breach of an insurance contract encompasses the entire course of conduct and is cumulative. *Pham v. State Farm Mut. Auto. Ins. Co., supra*, 70 P.3d at 572 (*citing Dale v. Guar. Nat'l Ins. Co., supra*).

I first note that I have found that the undisputed facts in this case demonstrate that Berkshire did not breach it's contract with Plaintiff in the handling and partial denial of her claim. For the same reasons, I likewise find that, under these facts and as a matter of law, Berkshire acted reasonably and did not act with bad faith or breach its duty of good fair and fair dealing in handling and partially denying Plaintiff's disability claim. And, significantly, when Plaintiff reasonably complied with her duty to provide meaningful proof of loss, Berkshire paid her claim. As such, Berkshire is entitled to summary judgment in its favor on Plaintiff's tort claim for bath faith breach.

### IV. CONSUMER PROTECTION ACT CLAIM

Finally, Berkshire argues that it is entitled to summary judgment on Plaintiff's second cause of action in which she seeks damages for Berkshire's alleged violation(s) of the Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-105, *et. seq.* (the "CCPA"). I again agree.

To prove a private cause of action under the CCPA, a plaintiff must show:

10

> (1) that the defendant engaged in an unfair or deceptive trade practice;
> (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation;
> (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property;
> (4) that the plaintiff suffered injury in fact to a legally protected interest; and
> (5) that the challenged practice caused the plaintiff's injury.

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.,* 62 P.3d 142, 146 -147 (Colo. 2003)(*citing Hall v. Walter,* 969 P.2d 224, 235 (Colo. 1998)).

Berkshire asserts that Plaintiff cannot prove that it engaged in an unfair or deceptive trade practice (element 1); or that any such deceptive trade practice significantly impacts the public as actual or potential consumers (element 3); or that Plaintiff suffered injury in fact to a legally protected interest (element 4). For the reasons stated above, I agree Plaintiff fails to meet her Rule 56 burden upon elements 1 and 3.

I also agree with Berkshire that Plaintiff has provided no evidence of specific facts to support her claim that Berkshire's actions here would impact the public as actual or potential consumers (element three). The relevant considerations to determine whether a challenged practice significantly impacts the public, within the context of a CCPA claim, include "(1) the number of consumers directly affected by the challenged practice; (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice; and (3) evidence that the challenged practice has previously impacted other consumers or has significant potential to do so in the future." *Brodeur v. American Home Assur. Co.,* 169 P.3d 139, 155 (Colo. 2007)(citations omitted). Plaintiff's sole assertion that Berkshire has been previously cited or fined for failure to comply with prompt payment laws does not raise the existence of a genuine a material issue of fact as to whether its actions in the processing of this particular and unusual

claim significantly impacts the public as actual or potential consumers. *See generally People ex rel. MacFarlane v. Alpert Corp.,* 660 P.2d 1295, 1297 (Colo. App. 1982)(The CCPA "was enacted in order to control various deceptive trade practices in dealing with the public"); *see also Curragh Queensland Min. Ltd. v. Dresser Industries, Inc.,* 55 P.3d 235, 241 (Colo. App. 2002); Fed. R. Civ. P. 56(e). As such, I conclude that Plaintiff's unsupported allegations in support of her claim under the CCPA do not constitute a disputed issue of fact sufficient to withstand summary judgment.

## V. MOTION FOR SANCTIONS/MAGISTRATE AMENDED RECOMMENDATION

Separately and independently from the above summary judgment analysis, this action must be dismissed as a result of Plaintiff's egregious and intolerable abusive litigation practices through Plaintiff's fraudulent actions and obstructive behavior during discovery. Defendants' Renewed Motion for Sanctions (Doc #196) was referred to Magistrate Judge Boyd N. Boland pursuant to 28 U.S.C. § 636(b) for recommendation. The Magistrate Judge issued his thorough and comprehensive Amended Recommendation on November 29, 2007 (Doc #296) following hearing held on November 14, 2007. Plaintiff has now timely filed specific written objections with appended exhibits to the Magistrate Judge's recommendation. I have therefore reviewed the recommendation *de novo* in light of the file and record in this case and upon review of the transcript of the November 14, 2007 hearing before the Magistrate Judge (Doc #301 (Court only)). On *de novo* review, I conclude that the Magistrate Judge's recommendation is correct in all respects. The Amended Recommendation is appended to and incorporated into this order by reference.

12

Plaintiff first objects that the Magistrate Judge's findings of fact are not supported by clear and convincing evidence. But my review is *de novo*. My *de novo* review of the hearing transcript in light of the file and record in this case convinces me that the Magistrate Judge's findings of fact are at least supported by clear and convincing evidence and indeed transcends that evidentiary standard.

The objections imply that Plaintiff's fraudulent actions implicate matters not material to her claims. But credibility is always relevant and material in any case.

Plaintiff also objects to the Magistrate Judge's legal conclusions, specifically his analysis of the factors set forth in *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992). To the contrary, my *de novo* review leads me to conclude that on the facts supported by at least clear and convincing evidence the Magistrate Judge's legal analysis is correct in all respects.

Plaintiff attempts to justify her abusive litigation tractics based upon the alleged disabilities made the subject matter of her claims. But the integrity of the judicial process so egregiously undermined in this case trumps any such asserted justification.

On *de novo* review, I conclude that the testimony of Dr. Miller, who conducted a record review including hours of Plaintiff's video depositions and was present during the hearing, was appropriately received and considered by the Magistrate Judge despite not having examined Plaintiff. The record meets FME 702 standards. In any event, if that testimony is disregarded on *de novo* review, the Magistrate Judge's findings and conclusions remain intact. *Amended Recommendation @ pp. 14-15*.

And finally, Plaintiff objects to the Magistrate Judge's "failure to take into account Defendants' abusive conduct in this case that demonstrates Defendants' lack of 'clean hands'."

But the Magistrate Judge was not asked to do that by way of appropriate motion or argument. His focus was on the issue before him and so is mine.

Accordingly, I reject Plaintiff's objections to the Magistrate Judge's Amended Recommendation and find and conclude independently that Defendants' Motion for Sanctions seeking dismissal of this case as a sanction for Plaintiff's abusive litigation practices must be granted as a separate and independent basis for dismissal.

ACCORDINGLY, I ORDER as follows:

1) Plaintiff's Motion for (Partial) Summary Judgment [**Doc # 116**] is DENIED;

2) Defendant Berkshire's Motion for Summary Judgment [**Doc # 119**] is GRANTED;

3) Plaintiff's Objections to the Amended Recommendation of United States Magistrate Judge [**Doc # 304**] are DENIED;

4) The Amended Recommendation of United States Magistrate Judge [**Doc # 296**] is ACCEPTED and FULLY ADOPTED as the opinion of this court;

5) Defendant Berkshire's Renewed Motion for Sanctions [**Doc #196**] is GRANTED;

6) Plaintiff's Complaint is DISMISSED WITH PREJUDICE and the Clerk of the Court shall ENTER JUDGMENT in favor of Defendants; and

7) Defendant Berkshire is awarded its costs.

Dated: December __27__, 2007, in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE