IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Case No. 04-cv-01619-LTB-BNB

TINA GARCIA,

Plaintiff,

v.

BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA, a wholly owned subsidiary of the Guardian Life Insurance Company of America, and
THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, a foreign insurance company,

Defendants.

_____

**ORDER**
_____

This matter arises on the following:

(1) **Plaintiff's Motion for the Recusal or Disqualification of Judge Babcock and Magistrate Judge Boland** [Doc. # 431, filed 2/12/2010] (the "First Motion to Disqualify"); and

(2) **Plaintiff's Motion to Disqualify Magistrate Boland and Judge Babcock and/or a Motion for Substitution** [Doc. # 444, filed 3/15/2010] (the "Second Motion to Disqualify").

Judge Babcock has denied the motions insofar as they seek his disqualification. Order [Doc. # 450, filed 4/21/2010]. The motions have been referred to me insofar as they seek my disqualification. See Order [Doc. # 430, filed 2/12/2010] and Order [Doc. # 445, filed 3/16/2010].

The plaintiff requests a "hearing to show proof that [I] should be promptly disqualified and be subjected to appropriate sanctions." First Motion to Disqualify [Doc. # 431] at ¶10. However, in reviewing the motions I have assumed as true all of the plaintiff's factual allegations. See United States v. Ritter, 540 F.2d 459, 462 (10th Cir. 1976). As a result, there are no disputed factual issues necessitating an evidentiary hearing. Id.

Oral argument would not materially assist me in the determination of the motions. After a thorough consideration of the motions, supporting briefs and materials, opposing briefs, and the case file, I DENY both motions as they pertain to me.

I. BACKGROUND

This action was removed to this court from a Colorado state court on August 5, 2004. The plaintiff asserted claims for Bad Faith/Breach of Insurance Contract and for Deceptive Trade Practices under the Colorado Consumer Protection Act based on the defendant's ("Berkshire") failure to pay benefits claimed under the plaintiff's disability insurance policy. The district judge referred the case to me for pretrial matters and settlement. Order [Doc. # 2].

I entered a scheduling order on October 8, 2004 [Doc. # 8], and the district judge set the matter for trial beginning September 26, 2005. Minute Order [Doc. # 10]. Thereafter, at the parties' joint request, the district judge stayed all proceedings and vacated all deadlines and hearings. Order [Doc. # 20, filed 5/10/2005]. The purpose of the stay was to allow Berkshire to "obtain and review medical records for Ms. Garcia and make an appropriate claims decision." Status Report [Doc. # 23, filed 6/10/2005] at ¶1.

No satisfactory resolution of the claim was reached. On August 15, 2005, at the plaintiff's request, I lifted the stay, ordered that discovery proceed, and set a revised case

2

schedule. Order [Doc. # 34]. Subsequently, I recognized that I had failed to have the parties obtain a new trial date, and on October 27, 2005, I ordered them to contact the chambers of the district judge on or before November 10, 2005, to obtain a trial date. Order [Doc. # 39, filed 10/27/2005]. The parties failed to comply.

By mere coincidence, I discovered that the parties had not obtained a trial date as I had ordered. On December 2, 2005, I held a status conference to address that failure and to contact the district judge to set the matter for trial, resulting in the following colloquy:

> THE COURT: So the real reason I made you all come here . . . is that I was a little bit peeved when I looked at my order of October 27th saying you should get a trial date and you don't have one. Is there something that I don't know about that?
>
> MR. GOLD [Plaintiff's counsel]: In terms of setting a trial date?
>
> THE COURT: Right. Have you contacted Judge Babcock's chambers?
>
> MR. GOLD: We have--I don't believe we have, Your Honor. I don't believe we have, but we will.
>
> THE COURT: Well, I will. That's why you're here.
>
> What happens is I send out an order like my order of October 27th saying get a trial date. I expect you to do that. If you don't, I don't look. I've got other work to do, so I don't look. And maybe next summer Judge Babcock's looking through his cases and he finds out, Gosh, I've got a two and a half year old case here and no trial date, and he calls me up and he says, justifiably, What happened here?
>
> And I have to say, Oh, my gosh, it slipped between the cracks. That embarrasses me. So I'm not really hung up on your not obeying my order, I can live with that. I am hung up about getting embarrassed in front of the chief judge. So that's why I made you come here, and I know--as I say, I know it's expensive, and I'm sorry to have done that, but that was my thinking.
>
>                             *   *   *

Okay. So what--I haven't looked at this. This is an ERISA case?

MR. GOLD: It is not, Your Honor. It's an individual policy.

THE COURT: It's not an ERISA case. So there will be a trial, absent summary judgment.

MR. GOLD: That's right.

THE COURT: All right. How long do you expect the trial to be?

MR. GOLD: I think probably six days would be enough.

THE COURT: And it's to a jury or not?

MR. GOLD: To a jury.

THE COURT: So what I'm going to do, unless you convince me it's the wrong thing to do, is have the deputy call Judge Babcock's chambers right now, request a six-day jury trial, given--giving him the dates we just went over. . . .

Any objection to that?

MR. BEAVER [Defense counsel]: No objection.

MR. [GOLD]: No, Your Honor.

[Whereupon a trial date was obtained.]
      \*   \*   \*
THE COURT: . . . Mr. Gold, Mr. Silverman, anything else this morning?

MR. GOLD: Nothing, Your Honor. . . .
      \*   \*   \*
THE COURT: Mr. Beaver, anything else?

MR. BEAVER: Yes, Your Honor. I'm so sorry about having missed that order [to contact the district judge for a trial date].

THE COURT: Oh.

MR. BEAVER: No, I--seriously I--we take the Court's orders very seriously, and it's bothersome that both offices somehow

managed to not get that calendared. I apologize.

THE COURT: We got it fixed. Thank you all very much.

Transcript of Proceedings, December 2, 2005 [Doc. # 53] at p. 2 line 19 through p.8 line 20.

Berkshire filed a Renewed Motion for Sanctions [Doc. # 196] on July 19, 2007 (the "Motion for Sanctions"). It sought an order dismissing the case as a sanction for the plaintiff's alleged misconduct by repeatedly submitting forged documents. Id. The Motion for Sanctions originally was set for hearing on September 7, 2007 [Doc. # 201]. That hearing ultimately was reset to October 31, 2007. In addition, at the request of the parties, a settlement conference was set for October 30, 2007. See Minute Order [Doc. # 233, filed 9/14/2007] and Minute Order [Doc. # 235, filed 9/14/2007].

The settlement conference occurred on October 30, 2007, as scheduled. Minute Entry [Doc. # 268]. No settlement was reached. Id.

The hearing on the Motion for Sanctions, scheduled to occur on October 31, was rescheduled because "Plaintiff was unable to attend because her father suffered a massive heart attack requiring her to fly to Virginia immediately." Affidavit of Jeffrey M. Nobel [Doc. # 431] (the "Nobel Aff.") at p. 11, ¶7. The hearing was reset to November 14, 2007. Minute Order [Doc. # 270].

I took evidence and heard arguments during the hearing on the Motion for Sanctions. On November 29, 2007, I issued an Amended Recommendation of United States Magistrate Judge [Doc. # 296] (the "Recommendation"). I found, among other things, that the plaintiff had fabricated four documents and that her "willingness to lie knows no bounds." Recommendation [Doc. # 296] at p. 13. I recommended that the Motion for Sanctions be granted and that the case

5

be dismissed with prejudice as a sanction for the plaintiff's abusive litigation practices. Id. at p. 19.

The district judge adopted my recommendation. Order [Doc. # 305, entered 12/27/2007]. The Tenth Circuit Court of Appeals affirmed. Order [Doc. # 401, filed 6/11/2009]. The circuit court also remanded for proceedings to "determine whether certain documents cited by [the plaintiff] on appeal were fabricated. . . ." Id. at p. 19.

## II. LAW

In the motions here at issue, the plaintiff requests that I recuse myself from presiding over this case pursuant to 28 U.S.C. § 455. Subsection (a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). As a general rule, recusal is required when "a reasonable person armed with the relevant facts would harbor doubts about the judge's impartiality." Maez v. Mountain States Telephone & Telegraph, Inc., 54 F.3d 1488, 1508 (10th Cir. 1995); see also United States v. Pearson, 203 F.3d 1243, 1264 (10th Cir.) (ruling that a judge should recuse himself from a case when his or her participation in the case creates an appearance of impropriety). The standard under 28 U.S.C. § 455(a) is an objective one, requiring recusal only "if a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." United States v. Cooley, 1 F.3d 985, 993 (10th Cir. 1993)(internal quotation and citations omitted). The inquiry is whether a reasonable factual basis exists for calling the judge's impartiality into question, and it is limited to outward manifestations and reasonable inferences drawn therefrom. Id.

Section 455(b)(1), 28 U.S.C., provides that I must disqualify myself when I have "a

6

personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." To warrant recusal under section 455(b)(1), the alleged bias must be personal and extrajudicial. United States v. Irwin, 561 F.2d 198, 200 (10th Cir. 1977)(holding that "[t]he bias charged must be of a personal nature and must be such as would likely result in a decision on some basis other than what the judge learned from his participation in the case."). Disqualification under section 455(b)(1) is "required only if actual bias or prejudice is proved by compelling evidence." Brokaw v. Mercer County, 235 F.3d 1000, 1025 (7th Cir. 2000)(quoting Hook v. McDade, 89 F.3d 350, 355 (7th Cir. 1996)).

The plaintiff also seeks my disqualification pursuant to 28 U.S.C. § 144, which addresses the personal bias or prejudice of a judge and provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

An affidavit filed pursuant to 28 U.S.C. § 144 must aver "with required particularity the identifying facts of time, place, persons, occasion, and circumstances," Hinman v. Rogers, 831 F.2d 937, 939 (10th Cir. 1987), and "is insufficient if it merely states conclusions, rumors, beliefs and opinions." Glass v. Pfeffer, 849 F.2d 1261, 1267 (10th Cir. 1988). While the facts alleged in the affidavit must be accepted as true, they are "strictly construed against the affiant and there is a substantial burden on the moving party to demonstrate that the judge is not

7

impartial," not a burden on the judge to prove that he or she is impartial. United States v. Burger, 964 F.2d 1065, 1070 (10th Cir. 1992). Because section 144 "is heavily weighed in favor of recusal, its requirements are to be strictly construed to prevent abuse." United States v. Sykes, 7 F.3d 1331, 1339 (7th Cir. 1993) (internal quotation and citation omitted).

The decision to recuse is committed to the sound discretion of the district court. Burger, 964 F.2d at 1070.

### III. ANALYSIS

The plaintiff asserts two bases for disqualification. First, the plaintiff argues that disqualification is required based upon my prior rulings in this case. Specifically:

> Plaintiff is entitled to have this issue decided by judges who do not have prior knowledge of disputed evidentiary facts concerning the issue or whose impartiality might reasonably be questioned. . . . Furthermore, she is certainly entitled to having this issue decided by judges who have not already expressed conclusions on the issue.
>
> In addition, since . . . Magistrate Judge Boland presided over hearings and conferences. . ., there can be no doubt that [he has] prior personal knowledge of disputed evidentiary facts concerning the issue.
>
> . . . . In light of the underlying case (including [Magistrate Judge Boland's] scathing indictments of Plaintiff's actions, honesty and credibility), there can be no doubt that the average reasonable person would have doubts about the impartiality of . . . Magistrate Judge Boland if [he is] permitted to continue to be involved in any way in this case.

First Motion to Disqualify [Doc. # 431] at pp. 4-5, ¶¶7-9. The plaintiff also points to my exchange with Mr. Gold at the December 2, 2005, status conference setting the case for trial as evidencing bias. Id. at p. 6, ¶13(B).

Second, the plaintiff seeks my disqualification arguing that it was improper for me to

8

conduct both the settlement conference and the evidentiary hearing on the Motion for Sanctions. In support of this argument the plaintiff has submitted two affidavits--one sworn to by her and the other by Jeffrey M. Nobel, a lawyer who attended certain proceedings as the plaintiff's friend and who served as her counsel of record briefly, from February 5, 2008, until August 15, 2008. The affidavits assert the following facts which the plaintiff contends show a bias requiring my disqualification:

- That I used confidential information learned during the settlement conference in

connection with deciding the Motion for Sanctions. According to Mr. Nobel:

> I thought it was very troubling and inequitable that Magistrate Boland, the person permitted and empowered to conduct a settlement conference on disputed issues, would (without restrictions on the use of confidential information he learned at the conference, and even after strongly expressing his opinions to Plaintiff at the settlement conference regarding the advisability of settlement and the probable consequences of her refusal to settle) would be permitted to preside over a proceeding on the identical issues and to make recommendations to the judge as to findings of fact and how those identical issues should be decided.

Nobel Aff. [Doc. # 431] at p.11,¶6;

- That I threatened the plaintiff during the settlement conference. In particular:

> I felt threatened during the settlement conference in the Magistrate's chambers when the Magistrate threatened to find against me at the hearing set for the following day. The Magistrate said his recommendation would ruin my credibility forever.

Garcia Aff. [Doc. # 431] at p. 8, ¶4. Mr. Nobel's affidavit adds:

> Several times during that settlement conference, Magistrate Boland told Plaintiff, Mr. Silvern [plaintiff's counsel] and me directly (and, according to Mr. Silvern, also told Mr. Silvern in separate "side" meetings) that Plaintiff faced the probable dismissal of her case after the Motions Hearing scheduled the following day if she refused to accept a settlement of the case that day that would

9

> require her to relinquish her Berkshire Life "Limited Edition" Executive Income Replacement policy rights. . . .
>
> Plaintiff was very emotional and cried often during the settlement conference in response to Magistrate Boland's threats regarding the dismissal her case unless she agreed to settle and forfeit her disability policy rights to lifetime benefits. . . . Magistrate Boland continued to urge her to forfeit the lifetime benefits guaranteed to her by the Berkshire policy in order to avoid dismissal of her case, remarkably using the following metaphor to support his argument: "When you are in bed with snakes, get out of bed." Even so, to the obvious chagrin of Magistrate Boland, Plaintiff insisted that the dismissal of her case was not justifiable and that she would not agree to the forfeiture of her lifetime rights under the policy. Thus, no settlement was reached.

Nobel Aff. [Doc. # 431] at p.10, ¶¶4-5; and

- That I refused the plaintiff's request to have the district judge conduct the hearing on

the Motion for Sanctions. Ms. Garcia's affidavit states:

> a. Steve Silvern insisted that the Magistrate was required to hold an evidentiary hearing to rule on the admissibility of evidence being used against me; but, the Magistrate insisted the court had wasted too much time on my case and he would decide on the evidence during the sanctions hearing.
>
> b. Judge Boland said he would issue his recommendation quickly after the hearing because in his mind the evidence was overwhelming against me.
>
> c. After several hours, I requested that the Judge rather than the Magistrate conduct the sanctions hearing but the Magistrate screamed that the court had already wasted too much time on my case and he would not be embarrassed any further by my delays in the case.
>
> d. . . .[T]he Judge would "rubber stamp" [the] recommendations without bothering to read it.

Garcia Aff. [Doc. # 431] at p. 8, ¶7.

1.  Prior Rulings

The plaintiff's argument that I should be disqualified based on my prior rulings is misplaced. As the Supreme Court held in Liteky v. United States, 510 U.S. 540, 555 (1994):

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves ( i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. . . . *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display. A judge's ordinary efforts at courtroom administration--even a stern and short-tempered judge's ordinary efforts at courtroom administration--remain immune.

The plaintiff's factual allegations of bias based on prior rulings and the December 2, 2005, status conference relate only to activities taken in a judicial capacity as a result of knowledge gained in the course of this case--a settlement conference and hearings. There is no allegation of personal prejudice or bias. To warrant disqualification, by contrast:

> The affidavit . . . must show that the bias is personal rather than judicial, and that it stems from an extrajudicial source--some source other than what the judge has learned through participation in the case.

Sykes, 7 F.3d at 1339. See United States v. Lake, 472 F.3d 1247, 1267 (10th Cir.)(refusing to disqualify judge on remand based on prior adverse and erroneous rulings).

11

## 2. Participation in Both a Settlement Conference and the Evidentiary Hearing on the Motion for Sanctions

The affidavits submitted in support of the motions to disqualify allege that it was improper for me to both conduct a settlement conference and conduct the evidentiary hearing on the Motion to Sanctions. The affidavits allege that I threatened the plaintiff during the settlement conference with dismissal of her case if she did not agree to settle; that I considered unspecified confidential information revealed during the settlement conference in connection with my Recommendation to dismiss the case as a sanction for abusive litigation practices; that I screamed at the plaintiff about wasting the court's time; and that I said the district judge would rubber stamp my recommendation without reading it.

Significantly, the settlement conference at which all of these threats and improper statements are alleged to have been made occurred on October 30, 2007. However, no mention of the asserted improprieties was made during the evidentiary hearing on the Motion for Sanctions which occurred on November 14, 2007, see Transcript of Proceedings, November 14, 2007 [Doc. # 301, filed 12/13/2007] (the "Trans. 11/14/2007"); no mention of them is made in the plaintiff's objection to the Recommendation filed December 26, 2007, Plaintiff's Objections [Doc. # 304]; no mention of them is made in Plaintiff's Cross-Motion to Amend Findings filed January 22, 2008 [Doc. # 314]; no mention of them is made in the Plaintiff's Motion for Relief From Order filed June 9, 2008 [Doc. # 358] (the "Rule 60(b) Motion"), filed pursuant to Fed. R. Civ. P. 60(b);[1] and no mention of them is made in the plaintiff's Opening Brief filed in the Tenth

---

[1] Jeffrey M. Nobel was co-counsel for the plaintiff at the time she filed her Rule 60(b) Motion. Significantly, however, none of the concerns raised in Mr. Nobel's affidavit in support of the First Motion to Disqualify appear in the Rule 60(b) Motion.

12

Circuit Court of Appeals on June 27, 2008 [Cir. Doc. # 01011987255].

To the contrary, the plaintiff testified in November 2007, at the hearing on the Motion for Sanctions, as follows:

> Q (By Mr. Silvern [plaintiff's counsel]) Is there anything else you'd like to tell the Court regarding this motion for sanctions and your opposition to it?
>
> A (By the plaintiff) Yes. I would like to say that--**that a person that I trust very much gave me some wisdom that says when a person is in bed with serpents, you should get out of bed**. And the allegations and the attacks to me, upon me, by the defense when they know--and they're based on their own experts--the extent of my disability admittedly is an act of--of just of serpents.

Trans. 11/14/2007 at p. 15 line 23 through p. 16 line 7.

Mr. Nobel in his affidavit quotes me as telling the plaintiff at the settlement conference that "[w]hen you are in bed with snakes, get out of bed." Nobel Aff. [Doc. # 431] at p. 10, ¶5. Although the statement now is used as a basis to seek my disqualification, at the time of the events in question, rather than being a basis for criticism, the plaintiff indicated that she trusted me "very much" and characterized the statement as "wisdom."

A party seeking the disqualification of a judge must do so at the earliest moment after gaining knowledge of the facts forming the basis for the disqualification. United States v. Barnes, 909 F.2d 1059, 1071 (7th Cir. 1990); In re Bokum Resources Corp., 26 B.R. 615 (D. N.M. 1982). Here, the plaintiff waited more than two years.

The motions to disqualify are untimely. As the circuit court noted in United States v. Pearson, 203 F.3d 1243, 1276 (10th Cir. 2000):

> [M]otions for recusal must be timely filed. Although this circuit has not attempted to define the precise moment at which a § 455(a) motion to recuse becomes untimely, our precedent requires a party to act promptly once it knows of the facts on which it relies in its motion. A promptly filed motion conserves judicial resources and alleviates the concern that it is motivated by adverse rulings or an attempt to manipulate the judicial process.

(Internal quotations and citations omitted.) Similarly, in Franks v. Nimmo, 796 F.2d 1230, 1234 (10th Cir. 1986), the circuit court ruled:

> The judicial process can hardly tolerate the practice of a litigant with knowledge of circumstances suggesting possible bias or prejudice holding back, while calling upon to court for hopefully favorable rulings, and then seeking recusal when they are not forthcoming.

(Internal quotation and citation omitted.)

Insofar as the plaintiff asserts that I should recuse myself pursuant to 28 U.S.C. § 455(a), I conclude that a reasonable person knowing all of the relevant facts would not harbor doubts about my impartiality in this case.

Insofar as the plaintiff asserts that I should recuse myself pursuant to 28 U.S.C. § 455(b)(1) and 28 U.S.C. § 144, the motions to disqualify are insufficient because they are untimely. In addition, they assert only activities taken in a judicial capacity as a result of knowledge gained in the course of this proceeding and are devoid of any allegations of personal prejudice or bias stemming from an extrajudicial source.

IT IS ORDERED that the First Motion to Disqualify [Doc. # 431] and the Second Motion to Disqualify [Doc. # 444] are DENIED.

Dated June 3, 2010.

                                      BY THE COURT:

                                      s/ Boyd N. Boland
                                      United States Magistrate Judge